

| | | | |
|---|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | HONG KONG | SAN FRANCISCO |
| 787 SEVENTH AVENUE | BOSTON | HOUSTON | SHANGHAI |
| NEW YORK, NY 10019 | BRUSSELS | LONDON | SINGAPORE |
| (212) 839 5300 | CHICAGO | LOS ANGELES | SYDNEY |
| (212) 839 5599 FAX | DALLAS | NEW YORK | TOKYO |
| | GENEVA | PALO ALTO | WASHINGTON, D.C. |

ejoyce@sidley.com
(212) 839 8555                                 FOUNDED 1866

December 12, 2014

**Via ECF**

The Honorable A. Kathleen Tomlinson
United States District Court for the Eastern
District of New York
100 Federal Plaza, P.O. Box 9014
Central Islip, NY 11722-9014

       Re:    *Dash v. Seagate Technology (US) Holdings, Inc.*, No. 2:13-cv-06329-LDW-AKT
               Motion to Compel Amended Discovery Responses

Dear Judge Tomlinson:

       Following a month-long meet-and-confer process, which included telephonic meet-and-confers on November 13, 2014 and December 12, 2014, Defendant Seagate Technology (US) Holdings, Inc. ("Seagate" or "Defendant") hereby requests an order compelling Plaintiff to provide an amended response to Seagate's Interrogatory Number 8 and its related requests for production. As explained in Seagate's Motion to Re-Open Deposition (D.E. 61), Mr. Dash gave testimony at his deposition that is irreconcilable with his response to Seagate's Interrogatory Number 8 and related requests for production. Despite Plaintiff's counsel's representations to Seagate and this Court that he would amend the interrogatory response by November 21, 2014, Mr. Dash still has not amended his response. In light of the impending December 31, 2014 deadline for completing all fact discovery, Plaintiff should be compelled to respond immediately.

       By way of background and as recounted in Seagate's Motion to Re-Open Mr. Dash's Deposition, Seagate's Interrogatory Number 8 requested that Mr. Dash "[i]dentify all external hard drives, including but not limited to drives with the Thunderbolt interface, purchased by you or by someone acting on your behalf between November 13, 2006 and the present"; in response, Mr. Dash stated "that he has purchased many external hard drives in the stated time period, does not recall the manufacturers, and that he disposes of older models as he purchases newer ones." D.E. 61-1 at 7.[1] At his deposition, however, Mr. Dash gave testimony contradicting his response

---

[1] Relatedly, Seagate's Request for Production No. 2 requested "[a]ll documents and things reflecting or relating to any other external hard drive purchased by you or anyone acting on your behalf between November 13, 2006 and the present," and Dash claimed that he "possess[es] no responsive, non-privileged documents." D.E. 61-2 at 4. Seagate's Request for Production No. 4 sought "All . . . information you saw, heard, read, contributed to, or were otherwise exposed to between November 13, 2006 and the present, *relating to external hard drives,* including but not limited to the LaCie Rugged Thunderbolt drive." *Id.* at 4-5. Plaintiff did not reveal that he

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.



December 12, 2014
Page 2

to Interrogatory Number 8.  He testified that he owns at least four external drives, suggested that he has "a few" other drives within his possession, and easily recalled at least two other drives that he has owned during the relevant period.  For instance, Dash testified that he currently uses a "3 terabyte USB 3 drive" that he purchased within the past two years and which he believes Seagate manufactured.  Dep. Tr. 38:11–40:2 (filed as Ex. C to D.E. 61).  He then testified that he transfers video images either to that drive "or [to] another external drive, a portable one," which is manufactured by "Western Digital" and which he bought "within the last year or so."  *Id.* at 55:2–56:13; *see id.* at 56:14–22 (discussing those two drives).  Later, when asked to "[i]dentify . . . all external hard drives that [he] either possess[es] or ha[s] control over currently," Dash responded "I don't know that I would be able to do that.  I *have a few* that I've kept for safe keeping of video and images . . . ."  *Id.* at 57:15–20.  Although Dash said that he would have to "speculate" to answer how many other external drives he has, he also identified "a couple of Toshiba internal drives that I used as external."  *Id.* at 57:23–59:17.  *See also id.* at 92:7–8, 100:13–101:10 (identifying "Wintec SSD [solid state drive]" and a Seagate Momentus drive he used in 2009).  Such testimony demonstrates that Plaintiff's interrogatory response withheld information material to class certification and the merits.[2]

All of this withheld information would have been relevant to Seagate's deposition preparations.  The interfaces available on and the drive transfer speeds of such products, the manner in which such products were packaged and advertised, and the prices Mr. Dash paid for such products all would have been relevant to probing his knowledge relevant to, and his claimed injury from, his purchase of the Rugged Thunderbolt Drive at issue.[3]

On November 7, 2014, shortly after reviewing the transcript of Mr. Dash's deposition, Seagate contacted Plaintiff's counsel to meet-and-confer about the inconsistency between the

---

possessed multiple other external hard drives, let alone offer to produce them.  *See id.* at 4, 11 (stating Plaintiff has no "things that refer or relate to . . . any external hard drives").

[2] Plaintiff's failure to disclose such information in his interrogatory response is especially notable because he testified that he (1) transfers data to these newly identified drives "at least daily," *id.* at 80:8-24, and (2) gave his Rugged Thunderbolt Drive to his attorney shortly after he purchased it and never used it again, *id.* at 208:14–209:2; *cf. id.* at 60:22–61:8.

[3] Plaintiff's counsel contends that Seagate has suffered no harm from these belated disclosures during the deposition, but those arguments are not credible.  D.E. 65 at 2-3.  Specifically, Plaintiff suggests that Seagate's counsel could have somehow used a *34-minute* lunch break to effectively investigate all of Mr. Dash's new disclosures at the deposition, and returned from lunch to effectively question Mr. Dash about them.  How, precisely, Seagate would have had time to research the packaging, websites and other information about these newly disclosed hard drives—which were not identified by make or model number—is unexplained.  In any event, even if the deposition testimony provided such identifying information, there is a marked difference between having sufficient time to review materials to prepare for a deposition and scrambling to do so while also trying to eat lunch.  Plaintiff's conduct was and is prejudicial.



December 12, 2014
Page 3

deposition testimony and interrogatory response.  During a telephonic meet-and-confer on November 13, 2014—the earliest date Plaintiff's counsel was available—Plaintiff agreed to (i) provide an amended interrogatory response by November 21, or (ii) give notice to Seagate's counsel earlier in the week of November 17 if Mr. Dash would be unable to revise the interrogatory response by November 21.  Plaintiff admitted to the Court that he made those agreements.  *See* D.E. 64 at 1.  Moreover, Plaintiff's November 21 letter to the Court implied that he had fulfilled them.  *Id.* ("Mr. Scarborough then said if I felt [Dash] would be unable to have [the amended response] by November 21st, that I should email that week.  I agreed.").

Despite his promises to Seagate and this Court, Mr. Dash still has not amended his response to Interrogatory No. 8 or the related requests for production, notwithstanding that Rule 26(a) imposes a continuing obligation to supplement such responses and the duty applies whenever corrective information is learned by the party or his attorney.  *See, e.g., Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 67–68 (E.D.N.Y. 2012).  Plaintiff's failure is significant based on the post-November 21 delay alone, but it is worse yet given that his November 21 letter to the Court admitted that *before his deposition*, "Mr. Dash realized that his answer to Interrogatory 8 was not complete." D.E. 64 at 1.  But not (i) before his October 16, 2014 deposition when Plaintiff's obligation to amend clearly had attached, (ii) after his inconsistent testimony, *or* (iii) after the transcript of the deposition was provided on October 31, 2014, did Plaintiff fulfill his obligation to amend, or even signal to Seagate that Plaintiff would need to amend.  And now nearly a month after Seagate called him on these breaches and nearly three weeks after the agreed deadline for curing them, Plaintiff remains in violation of his obligations.

Accordingly, Mr. Dash should be compelled to immediately provide amended interrogatory responses that fulfill his Rule 26 obligations.  Those responses should, *inter alia*, properly and precisely disclose the external hard drives he identified at his deposition, the additional drives that he indicated he possesses but could not identify, the other drives he formerly possessed but did not identify with specificity, as well as any drives that he formerly possessed during the relevant period but did not mention during the deposition.  Moreover, Seagate's document requests require Plaintiff to produce any information relating to such external hard drives that he has in his possession, custody, and control.  D.E. 61-2 at 4-5.  Additionally, Seagate again respectfully requests that its motion to re-open Mr. Dash's deposition be granted (D.E. 61), and, if necessary, the discovery period be extended to allow Seagate to complete the re-opened deposition in light of the amended disclosures and productions.[4]

---

[4] As Seagate detailed in its class certification filings, *see* D.E. 72-76, Plaintiff's motion for certification can and should be denied on the current record.  However, the discovery Plaintiff withheld also would have been relevant to class certification (which may prompt Seagate to seek to supplement the record), and still remains relevant to the merits of Dash's claim.



December 12, 2014
Page 4

Respectfully submitted,

/s/ Eamon P. Joyce

Eamon P. Joyce