**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MATT DASH, Individually And On Behalf of
All Others Similarly Situated,

                              Plaintiff,

                                                              **MEMORANDUM**
          - against -                                         **AND ORDER**

                                                              CV 13-6329 (LDW) (AKT)

SEAGATE TECHNOLOGY (US) HOLDINGS,
INC.,

                              Defendant.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      PRELIMINARY STATEMENT

        This is a putative consumer class action filed by Plaintiff Matt Dash ("Plaintiff"),

individually and on behalf of all others similarly situated, against Defendant Seagate Technology

(US) Holdings, Inc. ("Defendant" or "Seagate") alleging deceptive and unlawful conduct in the

marketing and selling of external hard drives with the Thunderbolt interface. *See generally*

Revised Amended Class Action Complaint [DE 53]. Pending before the Court are the following

discovery motions: (1) Defendant's motion to reopen Plaintiff's deposition [DE 61];

(2) Defendant's motion to compel Plaintiff to respond to Interrogatory Number 8 and its related

Requests for Production of Documents [DE 82]; (3) Plaintiff's motion to strike Defendant's

motion to compel [DE 89]; and (4) Plaintiff's motion to strike Defendant's Second Set of Requests

for Production of Documents and Requests for Admission [DE 90].

        For the reasons set forth below, Defendant's motion to reopen Plaintiff's deposition is

DENIED, Defendant's motion to compel an amended response to Interrogatory No. 8 and related

Requests for Production of Documents is GRANTED, Plaintiff's motion to strike Defendant's

motion to compel is DENIED, and Plaintiff's motion to strike Defendant's Second Set of Requests for Production of Documents and Requests for Admission is DENIED.

## II.    BACKGROUND

### A.    Factual Background

In the Revised Amended Class Action Complaint, Plaintiff alleges that the Defendant engaged in deceptive and unlawful conduct in marketing and selling external hard drives, including those with the Thunderbolt interface, with packaging bearing deceptive speedometer icons. *See* Revised Amended Class Action Complaint ("Am. Compl.") [DE 53] ¶¶ 1, 8, 13-14. Although Defendant represents on the packaging of its Thunderbolt drives and on its company web page (and elsewhere) that these external hard drives function with "shocking speed" and up to 10 gigabytes per second, Plaintiff asserts that the Thunderbolt drives do not (and presently cannot) reach these speeds. *Id.* ¶¶ 2-3.

According to the Amended Complaint, Defendant sells its Thunderbolt drives at a "premium price" in comparison to the "similarly abled hard drives" sold by its competitors on the basis of the claimed "enhanced" interface data transfer speed above other "slower" interfaces such as the "Universal Series Bus" or "FireWire." Am. Compl. ¶ 4. Plaintiff, however, maintains that the "claimed interface speed, advertised and touted by Defendant for their Thunderbolt drives, as sold, is impossible to attain." *Id.* ¶ 5. In fact, the Amended Complaint asserts that it is impossible for any existing hard drive to "take full advantage" of the speed claimed by Thunderbolt drives. *Id.*

Previously, Defendant Seagate packaged its USB external hard drives with a blue square graphic logo, which stated the "real world" top speeds that could be attained by the Thunderbolt

drive in megabytes per second. *Id.* ¶ 6. Around the time Defendant introduced the Thunderbolt technology to its external hard drives, Seagate ceased using the blue squares indicating the "real world" speeds in megabytes per second. *Id.* ¶ 7. Instead, Seagate began using a speedometer graphic or "icon" on the Thunderbolt drive's packaging and other locations. *Id.* ¶ 8. In this version, a speedometer icon found on the front of the package read "10 Gb/s" and stated "Enhanced Speed" below. *Id.* ¶ 9. Similarly, on the back of the drive's packaging, Seagate included language which read "10 Gb/s" and "Shocking Speed Up To 10 Gb/S" alongside a comparison chart of interface speeds. *Id.* ¶ 10.

In actuality, Plaintiff maintains, the Thunderbolt-enabled external hard drives sold by Seagate were "not significantly faster than Defendant's USB 3 models, or the USB 3 models of competitor's external hard drives." *Id.* ¶ 11. Plaintiff claims that Seagate knew that its Thunderbolt enabled drives were not, in fact, significantly faster in data transfer than its own USB 3 models, or the USB 3 models of competitor's external hard drives. *Id.* ¶ 12.

Nevertheless, the Defendant purportedly made the false claims quoted above in order to "deceive consumers into purchasing Defendant's Thunderbolt enabled drives over the USB 3 models of competitors' external hard drives to capture market share with the Thunderbolt technology." *Id.* ¶ 13. Consumers were deceived into paying premium prices as a result of this alleged deception by Seagate. *Id.* ¶ 14. Had Defendant "continued its practice of labeling its external hard drives with a graphic icon which indicated top speeds attainable by the drive in Mb/s (*i.e.*, 'Up To 110 Mb/s'), purchasers would see that Defendant's Thunderbolt enabled drives were not faster than the USB 3 models of competitor's external hard drives and would not pay premium prices for Thunderbolt." *Id.* ¶ 15. Notwithstanding these deceptive practices, Plaintiff alleges that

Defendant has continued to market and sell their Thunderbolt drives "fraudulently and at a premium to other hard drives capable of the same actual transfer speeds." *Id.* ¶ 16.

Plaintiff Matt Dash, a user of Apple computer products, states that he owns and utilizes an Apple laptop computer. *Id.* ¶ 17. Plaintiff has been an Apple user before, during, and after his purchase of Seagate's Thunderbolt drive. *Id.* ¶ 18. On August 2, 2013, Plaintiff purchased a LaCie[1] "Rugged Thunderbolt Series" 1TB Orange External Hard Drive [Model # 9000294] 5400 RPM with a Thunderbolt Interface (the "Rugged TBT Drive") at an Apple Store for approximately $200. *Id.* ¶¶ 19-20. He presently owns the drive. *Id.* ¶ 21. An amateur photographer, Plaintiff intended to use the Rugged TBT Drive to externally store large photo and video files for use on his laptop. *Id.* ¶¶ 22-23. Dash purchased Seagate's product to transfer and store his files which are "several gigabytes in size" in an external hard drive. *Id.* ¶ 25. For Plaintiff, "[s]peed in transfer of data was the crucial feature to Plaintiff's purchasing decision." *Id.* ¶ 26. Having read and relied upon the packaging of Seagate's product, Dash came to believe that the Rugged TBT Drive provided the "fastest possible data transfer rate." *Id.* ¶¶ 27-28. In purchasing Seagate's drive, Plaintiff paid a premium price over other drives sold at the Apple Store that offered only the USB 3 interface. *Id.* ¶ 29. Since the Rugged TBT Drive did not actually transfer data at the rate claimed by Seagate, Plaintiff claims that he overpaid for the product and therefore sustained damages. *Id.* ¶ 30.

### B. Relevant Procedural History

Plaintiff filed the original Complaint on November 14, 2013. *See* DE 1. Plaintiff brings the instant class action pursuant to New York General Business Law ("GBL") §§ 349, 350 and

---

[1]    LaCie is a wholly owned subsidiary of Seagate. *See id.* ¶ 33.

other states' analogous deceptive trade practices and advertising laws. *Id*. ¶¶ 249-256. Plaintiff also brings suit under a theory of common law fraud. *Id*. ¶¶ 257-269.[2]

Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(6) on May 26, 2014. *See* DE 26. On June 30, 2014, Judge Wexler issued a Memorandum and Order, granting, in part, and denying, in part, Defendant's motion to dismiss. *See* DE 38. The Court held that Plaintiff has adequately stated a claim under GBL §§ 349, 350. *Id*. at 7. However, Judge Wexler found that Plaintiff did not "adequately plead fraudulent intent" in support of his common law fraud claim. *Id*. at 9. As such, the Court granted Defendant's motion to dismiss the fraud claim, with leave for Plaintiff to replead within 30 days of the Order. *Id*. Finally, since Plaintiff voluntarily abandoned his breach of implied warranty claim, Judge Wexler granted Defendant's motion to dismiss that claim as well. *Id*. at 4.

Plaintiff filed an Amended Complaint on July 30, 2014. *See* DE 44. In the amended pleading, Plaintiff reasserted claims under GBL §§ 349 and 350 as well as common law fraud. *Id*. Pursuant to the directives issued by this Court during a September 4, 2014 Status Conference, Plaintiff repleaded and filed a Revised Amended Class Action Complaint on September 12, 2014, in compliance with the instructions set forth in Judge Wexler's June 30, 2014 Order regarding the scope of an amended common law fraud claim. DE 53. On December 15, 2014, Defendant filed a second motion to dismiss against the repleaded fraud claim. DE 83. Judge Wexler granted Defendant's motion to dismiss the fraud claim, with prejudice, on April 1, 2015, reasoning that "[i]f as alleged by Plaintiff, the Defendant candidly disclosed the very information Plaintiff claims to be misrepresented, the Court fails to see how there could be any fraud committed." DE 100 at

---

[2]     As set forth *infra*, Judge Wexler granted Defendant's motion to dismiss Plaintiff's common law fraud claim, with prejudice.

6-7. Defendant subsequently filed an Answer to the Revised Amended Class Action Complaint on April 20, 2015. DE 101.

There are several discovery motions pending before this Court. First, in a November 18, 2014 letter motion, Defendant requested leave to re-open Plaintiff's deposition to further explore information concerning other comparable hard drives which he had purchased and used. DE 61. Plaintiff identified these drives for the first time during his deposition. Subsequently, Defendant filed a motion on December 12, 2014, seeking to compel Plaintiff to produce an amended response to Interrogatory No. 8 so that Defendant's counsel could retrieve information concerning these other hard drives. DE 82. Plaintiff then filed two of his own motions on December 19, 2014 - - one seeking to strike the Defendant's motion to compel in light of Plaintiff's amended response to Interrogatory No. 8 [DE 89], and the second seeking to strike Defendant's Second Set of Requests for Production of Documents and Requests for Admission [DE 90]. These motions are addressed in turn below.

## III.  DISCUSSION

### A.  Defendant's Motion to Reopen Plaintiff's Deposition [DE 61]

Defendant moves to reopen the deposition of Plaintiff Matt Dash "once he has fully responded to Interrogatory Number 8 and related Requests for Production that Seagate originally submitted." DE 61 at 1. According to Defendant, at Plaintiff's deposition "it quickly became clear that [Plaintiff's] testimony was irreconcilable with his response to Seagate's Interrogatory No. 8— which is relevant to Mr. Dash's fitness to serve as a class representative and the merits of his case, including his knowledge of external hard drives and their associated interfaces—and Seagate's related requests for production." *Id*. The parties engaged in a good faith meet-and-confer after

which Plaintiff consented to amending his response to Interrogatory No. 8.  *Id.*  However, Plaintiff refused Defendant's requests to (1) re-open his deposition to question him about the amended response and (2) conduct relevant forensic examinations of the hard drive related to the amended response.  *Id*.

Specifically, Defendant's Interrogatory No. 8 asks Plaintiff to "[i]dentify all external hard drives, including but not limited to drives with the Thunderbolt interface, purchased by you or by someone acting on your behalf between November 13, 2006 and the present."  *Id*.  In response, Plaintiff stated the following:

> Plaintiff objects to this request as vague and ambiguous with respect to the term "someone acting on your behalf;" to the extent that they are over-broad, unduly burdensome, vague, and ambiguous; as seeking information outside the relevant time frame of the litigation; and to the extent that they require Plaintiff to speculate on past purchases.
>
> Subject to the above objections and the General Objections to these Interrogatories, Plaintiff responds that he has purchased many external hard drives in the stated time period, does not recall the manufacturers, and that he disposes of older models as he purchases newer ones.

*See* DE 61, Ex. A at 7.  Despite the continuing obligation to supplement discovery responses under Rule 26(a), Defendant maintains that Plaintiff has never amended this response.  *Id*. at 1-2. Testimony adduced during Plaintiff's deposition, however, contradicted his response to Interrogatory No. 8.  *Id*. at 2.  In short, Plaintiff testified that he (1) owns at least four external drives, (2) has "a few" other drives within his possession, and (3) recalled at least two other drives that he owned during the relevant period.  *Id*.  Plaintiff further testified that he transfers data to these newly identified drives on at least a daily basis and suggested that he gave the Seagate Rugged Thunderbolt drive to his attorney within one or two months after his purchase.  *Id*.

Defendant argues that this "testimony demonstrated that [Plaintiff's] interrogatory response withheld information material to his ability to serve as a class representative and the merits of his claims." *Id*. Defendant asserts that information was withheld from Interrogatory Response No. 8 and would have been relevant to Defendant's deposition preparations. *Id*. More specifically, Defendant claims that "[t]he interfaces available on and the drive transfer speeds of such products, the manner in which such products were packaged and advertised, and the prices Dash paid for such products all would have been relevant to probing his knowledge relevant to, and his claimed injury from, his purchase of the Rugged Thunderbolt Drive at issue, and his ability to represent a class of all consumers who have purchased a Rugged Thunderbolt Drive." *Id*. at 2-3.

Pursuant to Rule 26(b)(2) and 30(b)(2)(A)(ii), Defendant asserts that leave to reopen Plaintiff's deposition should be granted because "Mr. Dash's deposition revealed extensive new information of the type sought in Seagate's interrogatories and contradicted the interrogatory response." *Id*. at 3 (citing *Ganci v. U.S. Limousine Serv., Ltd.*, No. 10 Civ. 3027, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011)). Accordingly, Defendant seeks leave to reopen Plaintiff's deposition as soon as Plaintiff has produced a "new and compliant response to Interrogatory No. 8 and produces the related documents." *Id*.

In opposing the motion, Plaintiff's counsel responds that he realized his client's answer to Interrogatory No. 8 was incomplete while reviewing documents in preparing for the deposition. DE 64 at 1. Plaintiff was thus instructed by his counsel to answer the question fully at his deposition after realizing this oversight. *Id*. Plaintiff's counsel then agreed to revise Interrogatory No. 8 but "did not see a reason to reopen the deposition." *Id*. Plaintiff, moreover, finds unjustified Defendant's request to conduct forensic imaging of Plaintiff's computer hard drive and the Rugged

Thunderbolt drive at issue. *Id*. at 1-2. Counsel points out that the Court has previously denied Defendant's request to conduct forensic imaging of these drives. *Id*. at 2.

Moreover, according to Plaintiff's counsel, Defendant had the opportunity during Plaintiff's deposition to explore the very areas which counsel now seeks to inquire into in a re-opened deposition, but Defendant failed to do so. *Id*. Plaintiff testified about all of his external drives "very early in the deposition" but neither of Defendant's attorneys "followed up at all with any of the questions from their motion." *Id*. As Plaintiff notes,

> the "revelations" about Mr. Dash's external hard drives occurred before the first break in the deposition, before noon. There were 5 hours left to follow up with questions about discovery "inconsistencies," "speed," "price," or "advertising." Defendant made an affirmative choice not to follow up.

*Id*. at 5-6.

Plaintiff also takes issue with Defendant's reliance on *Ganci* in moving to re-open the deposition. *Id*. at 6. Plaintiff points out that in *Ganci,* this Court found sufficient basis to re-open plaintiff's deposition for a limited two-hour period to allow defendants to question plaintiff regarding information received in response to FOIL requests as well as other information learned since the deposition. *Ganci,* 2011 WL 4407461, at *2. In short, leave to re-open plaintiff's deposition was appropriate to permit defendants to pursue questioning regarding new employment-related discovery obtained *after* the conclusion of plaintiff's deposition and which was not previously available. *Id.* at *1-2. Unlike the circumstances in *Ganci,* however, Plaintiff emphasizes that the information Defendant seeks to explore here was not discovered *post-*deposition and that it was the Defendant's attorney who "chose not to follow a line of questioning available to [him] with 5 hours left in a deposition." DE 64 at 6. Also, unlike *Ganci* where the

information defendants sought from plaintiff could not be addressed through a supplemental interrogatory response, here Defendant has the opportunity to obtain the same information he seeks to obtain in a re-opened deposition by means of a revised interrogatory response. *Id.* In addition, Plaintiff contends that Defendant's counsel specifically marked Plaintiff's interrogatory responses as an exhibit during his deposition and chose not to follow up with any questions on the document - - a fact which presents "only stronger evidence than before that 'Defendant had no wish to cure any "inconsistencies" between that morning deposition testimony and Mr. Dash's interrogatory responses.'" DE 65 at 2.

Finally, Plaintiff asks the Court to reject Defendant's request to conduct forensic imaging of these drives for the same reasons articulated in the Court's August 22, 2014 Minute Order. DE 64 at 6; DE 49 ¶ 1. In denying Defendant's request to inspect any documents and files on Plaintiff's laptop, the Court reasoned that this case is centered around the "testing and inspection of the hardware at issue as well as testing the speed of Defendant's product. The private and confidential records which may exist on Plaintiff's laptop have no bearing on the claims at bar." *Id.* The Court therefore denied Defendant's request to conduct a forensic examination, "at least at this stage of the litigation." *Id.*

"A person who has previously been deposed in a matter may be deposed again, but only with leave of the court." *Sentry Ins. v. Brand Mgmt. Inc.*, No. 10 Civ. 347, 2012 WL 3288178, at *8 (E.D.N.Y. Aug. 10, 2012) (citing Fed. R. Civ. P. 30(a)(2)(A)(ii)). "Leave should be granted to the extent that doing so is consistent with the factors set forth in Rule 26(b)(2), such as 'whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether

the burden of a second deposition outweighs its potential benefit.'" *Id.* (quoting *Ganci,* 2011 WL 4407461, at *2) (collecting cases). "Courts will typically reopen a deposition where there is new information on which a witness should be questioned." *Id.* (quoting *Ganci,* 2011 WL 4407461, at *2); *see, e.g, Vincent v. Mortman,* No. 04 Civ. 491, 2006 WL 726680, at *1-2 (D. Conn. Mar. 17, 2006) (allowing plaintiff to reopen deposition when one witness' deposition contradicted defendants' deposition and medical records); *Chang v. Safe Horizons,* No. 03 Civ. 10100, 2004 WL 1874965, at *2 (S.D.N.Y. Aug. 18, 2004); *Keck v. Union Bank of Switzerland,* No. 94 Civ. 4912, 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) (deposition reopened where affidavit provided evidence conflicting with witness testimony). Where the deposition is reopened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information. *See Vincent,* 2006 WL 726680, at *2; *Keck,* 1997 WL 411931, at *2-4.

Here, Seagate has failed to persuade the Court that there are similar grounds for re-opening Plaintiff's deposition. Plaintiff has agreed to supplement his response to Interrogatory No. 8 in light of his deposition testimony. At this juncture, the Court finds that re-opening the deposition would be "unnecessarily cumulative." Likewise, Defendant's counsel had the opportunity to examine Dash with follow-up questions regarding the other drives that he testified he purchased and used during the relevant period. Although Plaintiff made reference to a number of external drives during his deposition, Seagate's counsel apparently did not probe further into these responses in order to ascertain the transfer speeds of these drives, the manner in which they were packaged and advertised, and the prices Dash paid for these storage devices. For example, Plaintiff testified about every computer he purchased during the relevant period (*e.g.*, MacBook

Air, MacBook Pro), every camera he used (*e.g.*, Sony NEX-5 which has a mini USB 2 storage interface, point and shoot digital cameras, Canon Mark IID digital camera), every phone he used (*e.g.*, iPhone 5), every video camera he used (*e.g.*, iPhone, Canon HF 11, GoPro with a mini USB 2 storage drive), and the Seagate terabyte USB 3 drive he used to transfer files from the GoPro camera to his MacBook Air. *See* DE 63 at 2-5. Defendant's counsel failed to ask Plaintiff about the price paid for any of these items or to inquire about how they were advertised. *Id*. at 5. The information Seagate seeks to explore now could have been ascertained and further examined during Plaintiff's deposition.

The Court, moreover, finds *Ganci* to be inapposite to the facts at bar. Whereas this Court in *Ganci* granted defendant leave to re-open plaintiff's deposition on the basis of newly discovered evidence after plaintiff's deposition, here the facts concerning Plaintiff's purchase and use of other external drives were available to Defendant's counsel *during* Plaintiff's deposition. The Court finds that counsel either neglected or affirmatively opted to forego this area of inquiry. Defendant, in any event, will be provided with an amended response to Interrogatory No. 8 and related Requests for Production consistent with the testimony adduced during Plaintiff's deposition.

Accordingly, the Court hereby DENIES Defendant's motion to re-open Plaintiff's deposition. The Court also DENIES Defendant's motion to conduct a forensic examination of Plaintiff's hard drives, for the reasons identified in the Court's August 22, 2014 Minute Order.

### B. Defendant's Motion to Compel Amended Discovery Responses [DE 82]

On December 12, 2014, Defendant moved to compel Plaintiff to provide an amended response to Interrogatory No. 8 and related Requests for Production. DE 82. As of the date of Defendant's December 12 motion, Plaintiff had not provided an amended response despite

representations that one was forthcoming. *Id*. at 1. Defendant again argues that Plaintiff "withheld information" that would have been relevant to preparing for his deposition. *Id*. at 2. Following a meet-and-confer, Plaintiff agreed to supply an amended response by November 21, 2014 or, alternatively, to give notice to Defendant's counsel earlier in the week of November 17 if Plaintiff would be unable to revise the interrogatory response by November 21. *Id*. at 3. Plaintiff failed to do so. *Id*. As such, Defendant requests that the Court compel Plaintiff to "immediately provide amended interrogatory responses that fulfill his Rule 26 obligations." *Id*. Finally, Defendant reiterates its request to reopen Plaintiff's deposition after reviewing Plaintiff's anticipated amended disclosures and productions. *Id*.

Plaintiff subsequently moved to strike Defendant's December 12, 2014 motion to compel interrogatory responses, claiming that he has served an amended response. DE 89. Plaintiff takes issue with the November 21 deadline referenced by Defendant's counsel and asserts that an amended response was served via first class mail and email on December 15, 2014. *Id*. at 1. Moreover, Plaintiff states that he had no obligation to serve an amended interrogatory response in the first instance. *Id*. According to Plaintiff, Rule 26(e)(1) creates a duty in a party to "supplement or correct its disclosure or response." *Id*. (quoting Fed. R. Civ. P. 26(e)(1)). Plaintiff claims that this duty, however, is only triggered "if the additional or corrective information has not otherwise been made known to other parties during the discovery process." *Id*. (quoting Fed. R. Civ. P. 26(e)(1)(A)). In any event, Plaintiff maintains that he served an amended verified interrogatory response in writing "[i]n order to be completely thorough." *Id*.

Notwithstanding Plaintiff's representations, Defendant has objected to Plaintiff's amended response. *Id*. at 2. As Plaintiff notes, "Defendant states it believes there is an ongoing obligation

for Plaintiff to supplement discovery with documents and materials *outside* the stated time period of its discovery instruments." *Id*. (emphasis in original). Plaintiff, on the other hand, argues that he is not obliged to "continually update with new documents and facts as they are produced *after* and *outside* the time period specified in the interrogatories and document requests." *Id*. (emphasis in original). Accordingly, Plaintiff "believed he needed to indicate the two drives in his amended response as their purchase fell *within that time period* as he [testified] at his deposition." *Id*. (emphasis in original). Apart from these external drives, the other drives Plaintiff referred to in his deposition were either internal drives or drives which fall outside the temporal scope of the interrogatory definitions and the interrogatory itself. *Id*.

Finally, contrary to Defendant's assertions, Plaintiff contends that he had no obligation to preserve the packaging of a Western Digital Drive he purchased *after* answering Defendant's April 2015 interrogatories because the "purchase was temporally outside of the specifications of the interrogatory." *Id*. Moreover, Defendant maintains that Plaintiff never demanded the model number for the drives at issue "as a plain reading of the interrogatory will show." *Id*. Since Plaintiff has "amended his response beyond his responsibility under Fed.R.Civ.P. 26(e)(1)(A)," he requests that the Court strike Defendant's motion to compel. *Id*.

In a December 19, 2014 letter, Defendant updated the Court regarding its December 12 motion to compel. DE 91.[3] Although Defendant acknowledged that Plaintiff served an "Objection and Amended Response to Defendant's Interrogatory No. 8," Defendant continues to maintain that the response "(i) still is insufficient to provide the information to which Seagate has been entitled

---

[3]     Under Rule III.A.1 of this Court's Individual Practice Rules, "[r]eplies are not permitted on letter motions." However, given the fact that Defendant's December 19 letter constitutes an update informing the Court about Plaintiff's amended interrogatory response, the Court will consider the submission.

since May, and (ii) does not make any effort to cure Plaintiff's deficiencies in responding to related Requests for Production." *Id*. at 1.  Thus, Defendant states that it will not be withdrawing its December 12 motion to compel.  *Id*.

As an initial matter, Defendant claims that Plaintiff's amended response "fails to adequately identify the drives Mr. Dash had in his possession." *Id*.  Failure to provide a model number deprives Defendant from conducting a "meaningful" deposition of the hard drives. *Id*. at 1-2.  Defendant argues that "Plaintiff should be required to provide model numbers and other 'identify[ing]' information necessary for Seagate to determine precisely which drives Mr. Dash had in his possession and therefore what representations about interface and drive speeds (and other technical details) Mr. Dash saw before purchasing the Rugged Thunderbolt Drive at issue here." *Id*. at 2.  Defendant's counsel points out that these are not requests to supplement a response to Interrogatory No. 8, but, rather, to amend the response in light of the information which was purportedly withheld by Plaintiff when he first responded to Defendant's interrogatory. *Id*.

Second, Defendant asserts that Plaintiff has yet to produce related "documents and things" and "information [Mr. Dash] saw, heard, read, contributed to, or w[as] exposed to" regarding each of the drives identified in the amended interrogatory response, including the drives themselves. *Id*. According to the Defendant, Plaintiff had a duty to preserve the packaging for the Western Digital drive which was purchased after Plaintiff served responses to Defendant's interrogatories because the duty to preserve "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id*. at 1-2 (quoting *Siani v. State Univ. of N.Y. at Farmingdale*, No. 09 Civ. 407, 2010 WL 3170664, at *1

(E.D.N.Y. Aug. 10, 2010)).  The information regarding the Western Digital drive, Defendant

submits, is "relevant to the present litigation (including Mr. Dash's knowledge about hard drive

capabilities and the comparative strengths and weakness of various drives, the reasons for why he

purchased certain drives, his understanding of packaging representations, and his price premium

theory) and directly responsive to Seagate's discovery requests."  *Id*.  Given these circumstances,

Defendant requests that the Court compel Plaintiff to amend his response to Interrogatory No. 8

and related Requests for Production in compliance with Rule 26.  *Id*.  Specifically, Defendant asks

that the Court order Plaintiff to "properly and precisely disclose the external hard drives he

identified at his deposition, including information necessary to identify those drives, the additional

drives that he indicated he possesses but could not identify, the other drives he formerly possessed

but did not identify with specificity, as well as any drives that he formerly possessed during the

relevant period but did not mention during the deposition."  *Id*.  Defendant wants the drive model

numbers so as to be able to identify with precision the drives Plaintiff had in his "possession,

custody, and control."  *Id*.  Defendant continues to seek to reopen Plaintiff's deposition in order to

explore these issues.  *Id*.

     In Defendant's letter opposition to Plaintiff's motion to strike, Defendant notes,

preliminarily, that Plaintiff's motion is "procedurally improper" since Rule 12(f) permits pleadings

to be stricken - - not motions.  DE 92 at 1 (citing *Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, No.

12 Civ. 2285, 2014 WL 5722628, at *12 (E.D.N.Y. Nov. 6, 2014) (collecting authority); *accord

Del Col v. Rice*, No. 11 Civ. 5138, 2014 WL 1834983, at *9 (E.D.N.Y. May 7, 2014) (denying

motion to strike portions of memorandum of law as procedurally improper because it was not a

"pleading"); 2 James Wm. Moore *et. al.*, Moore's Federal Practice § 12.37[2] (3d ed. 2004)

("Motions, briefs, or memoranda . . . may not be attacked by the motion to strike.").  More substantively, Defendant argues that the motion to compel is well-grounded since it requests the identity of all drives purchased by Plaintiff with the necessary detail and also seeks to have the related documents produced.  DE 92 at 1.  Contrary to Plaintiff's contentions, Defendant claims further that Plaintiff had a duty to preserve the packaging from the Western Digital Drive.  *Id*.  Essentially, the Defendant states that "Plaintiff brought litigation regarding hard drives in which his knowledge of and experience with hard drives is directly at issue, yet he apparently failed to retain and destroyed documents that address those subjects."  *Id*.  Finally, according to Defendant's counsel, Plaintiff's failure to respond to the discovery motion will not prejudice Plaintiff, whereas Defendant will be aggrieved if Plaintiff fails to disclose relevant materials that could aid in Seagate's defense.  *Id*. at 2-3.

Having considered the foregoing information and arguments, the Court is GRANTING Defendant's motion to compel discovery and DENYING Plaintiff's motion to strike.  At the outset, the Court concurs that Plaintiff's motion to strike is procedurally improper since such motions are appropriately directed at pleadings - - not motions.  *See Fequiere v. Tribeca Lending*, No. 14 Civ. 812, 2015 WL 1412580 (E.D.N.Y. Mar. 20, 2015) ("Rule 12(f) of the Federal Rules of Civil Procedure allows a court to strike from a pleading 'an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'") (quoting Fed. R. Civ. P. 12(f)).  Plaintiff should have and could have filed opposition to Defendant's motion to compel discovery, articulating the reasons why the motion should be denied within that response.  In denying Plaintiff's motion to strike, the Court treats the motion as Plaintiff's formal opposition to Defendant's motion to compel discovery.

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Greene v. City of New York*, No. 08 Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (explaining that Rule 26 must be construed broadly to include any matter that has, or could reasonably have, bearing on any issue that is, or may be, in the case)); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D.Conn. Mar. 4, 2009); *Evans v. Calise,* No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)). In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes"); *Coggins v. Cnty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y.  Feb.

6, 2014) (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.") (internal quotation omitted).

Having reviewed Plaintiff's amended response to Interrogatory No. 8 in conjunction with Defendant's objections, the Court finds the amendment to be responsive but not entirely adequate. Plaintiff's amended response states as follows:

> Pursuant to the Federal Rules [of] Civil Procedure (the "Federal Rules") and the Local Rules for the Southern and Eastern Districts of New York (the "Local Rules") Matt Dash ("Plaintiff") hereby renews his collective obligations to *Defendant Seagate Technology (US) Holding, Inc.'s First Set of Interrogatories To Plaintiff* dated April 23, 2014. This response produced by Plaintiff shall be subject to Administrative Order 2004-09 issued by the United States District Court for the Eastern District of New York and the Confidentiality Order entered by the Court on May 14, 2014. To comply with Federal Rule 26(a), Mr. Dash amends his answer to Number 8.

> 8. I have purchased many external hard drives in the stated time period and only one with a Thunderbolt interface. Of the other drives I have purchased, when I buy a new external hard drive, it is usually larger in storage capacity than the drive it replaces. I transfer data from the old drive to the new, and store the old ones in a junk drawer, give them to friends, or store them in my attic or basement. I do not recall ever looking for one to get the data that remained on it, to access them again. I have searched my house for any of these old drives with no result.

> At my deposition, I mentioned drives that I use or can remember buying. Of the drives I can recall having owned are:

> - a Seagate 3-terabyte USB3 "Expansion Desktop Drive" (Model SRD00F2) bought over two years ago still in my possession; and

- a Wingate express card drive bought over 4 years ago that I cannot find.

    I own a 2-terabyte Western Digital USB3 drive bought less than five months ago (after I answered the April interrogatories).   The Toshiba and Seagate Momentus drives mentioned in my deposition are internal drives.

DE 89, Ex. 2 (emphasis in original).  Although Plaintiff claims that he has adequately amended his response to Interrogatory No. 8, Defendant claims that the responses still lack the necessary detail for counsel to identify the drives with precision.  Defendant now claims that Plaintiff should be required to provide model numbers and other identifying information necessary for Seagate to determine exactly which drives Mr. Dash had in his possession and what representations about interface and drive speeds (and other technical details) he saw before purchasing the Rugged Thunderbolt Drive at issue here.  However, as Plaintiff correctly points out, Interrogatory No. 8 only sought to identify these external drives and did not specifically seek the exact model numbers. Nevertheless, reading the request broadly, the Court directs Plaintiff to provide the model numbers and any other identifying information (even if that information must be gleaned from external sources such as the Internet and industry publications) of the external drives set forth in Plaintiff's amended response to Interrogatory No. 8.

In addition, Plaintiff has failed to address Defendant's related Requests for Production in connection with Interrogatory No. 8.  In fact, Plaintiff does not even mention this particular aspect of Defendant's motion in his response.  Plaintiff originally responded that he "possesses no responsive, non-privileged documents" with respect to Defendant's related Requests for Production of documents concerning the other external hard drives Plaintiff purchased.  *See* DE 61, Ex. B.  Given the new testimony concerning other external drives offered at the deposition,

Plaintiff must also amend his responses to Seagate's related Requests for Production. Accordingly, the Court GRANTS Defendant's motion to compel amended responses to Requests for Production Nos. 2, 3, 4, 9, 21, 22, and 23. *See* DE 61, Ex. B.

Finally, the parties dispute whether Plaintiff breached his duty to preserve by discarding the consumer packaging for the 2-terabyte Western Digital USB3 drive that was purchased *after* Plaintiff responded to Defendant's initial set of interrogatories in April 2014. The duty to preserve arises, not when litigation is certain, but rather when it is "reasonably foreseeable." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001); *see F.D.I.C. v. Malik*, No. 09 Civ. 4805, 2012 WL 1019978, at *1 n.1 (E.D.N.Y. Mar. 26, 2012) (holding that duty to preserve arose when attorneys who allegedly destroyed documents represented the plaintiff in the underlying transaction at issue); *In re Semrow*, No. 03 Civ. 1142, 2011 WL 1304448, at *3 (D. Conn. Mar. 31, 2011) (holding that duty to preserve vessel arose prior to commencement of suit because the fact that fatalities occurred should have put party on notice of future litigation); *Siani*, 2010 WL 3170664, at *6 (holding that receipt of letter informing defendants of alleged discrimination and intent to pursue claim triggered duty to preserve).

Plaintiff claims that he had no obligation to preserve the packaging for the Western Digital drive because it was outside of the temporal scope of the interrogatories propounded by Defendant's counsel. Defendant's Interrogatory No. 8 demanded that Plaintiff identify all external hard drives purchased since November 13, 2006 through the present. Since Plaintiff had yet to purchase the Western Digital drive at the time he responded to Defendant's interrogatories, Plaintiff reasons that he was under no obligation to supplement his responses. That conclusion is flawed. Under Rule 26, parties have a "duty to supplement 'in a timely manner' when a 'party

learns' that its prior response 'is incomplete or incorrect' 'in some material respect' and 'the additional or corrective information has not otherwise been made known to the other parties,' or 'in writing,' Fed.R.Civ.P. 26(e)(1)(A), or by court order, Fed.R.Civ.P. 26(e)(1)(B)." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 75 (W.D.N.Y. 2011); *see also Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10 Civ. 5612, 2012 WL 6641715, at *1 (E.D.N.Y. Dec. 19, 2012) (explaining that any party who has responded to, *inter alia*, an interrogatory must supplement or correct its response under Rule 26(e)(1)).  Numerous cases within the Second Circuit hold "that Rule 26(e) imposes a continuing obligation upon a responding party to supplement prior discovery responses based on later acquired information when the party learns of its existence and materiality." *Robbins & Myers*, 274 F.R.D. at 79-80 (collecting cases).

Plaintiff seeks to recover damages, individually and behalf of a class, for Defendant's purported use of deceptive packaging to cause consumers to believe that the Seagate Rugged TBT Drive was faster than it actually operated.  It is therefore reasonable to conclude that Plaintiff's other purchases would be relevant to determining his knowledge of and experience with other competing external hard drives, notwithstanding Plaintiff's reading of the interrogatory.  The Court finds that Plaintiff had an obligation to preserve the packaging for the Western Digital drive since it is relevant to this consumer protection action.  Plaintiff is therefore directed to provide Defendant with a copy of the packaging for the 2-terabyte Western Digital USB3 drive within fourteen (14) days.  To the extent that Plaintiff no longer possesses these materials, he is directed to contact the manufacturer immediately and/or obtain the packaging information from external sources (*e.g.*, Internet, Product Catalog).

**C.     Plaintiff's Motion to Strike Defendant's Second Set of Requests for Production of Documents and Requests for Admission [DE 90]**

Plaintiff filed a motion to strike Defendant's Second Set of Requests for Production of Documents and Requests for Admission on December 19, 2014.  DE 90.  Plaintiff moves to strike the Requests for Admission as void for invalid service under Rule 5(b)(2)(E), as an impermissible number of interrogatories under Rule 33(a)(1) or, alternatively, untimely under the Court's Scheduling Order.  *Id*. at 1.  First, Plaintiff argues that Defendant's November 29, 2014 Requests for Admission are procedurally defective since they were served via email and Plaintiff never expressly consented to service by "electronic means" as required under Rule 5(b)(2)(E).  *Id*. 1-2.  Alternatively, Plaintiff claims that the Court should strike the Requests for Admission because they were served late.  *Id*. at 2.  Rule 36(a)(3) requires that responses to Requests for Admission be served 30 days after service.  *Id*. at 5.  Moreover, Rule 6(d) extends that 30-day period by three days following service by "electronic means" under Rule 5(b)(2)(E).  *Id*. at 5-6.  Accordingly, Plaintiff asserts that the proper outside deadline to respond to Defendant's Requests for Admission would have been 33 days later or, namely, January 2, 2015 (33 days from Sunday, November 29, 2014 if the Court accepts Sunday as a valid day for service) or January 5, 2015 (33 days from Monday, December 1, 2014 - - the first business day after Defendant's Requests for Admission were served).  *Id*. at 6.  Since these response deadlines are beyond the Court's December 31, 2014 discovery cut-off date, Plaintiff argues that he was under no obligation to respond to Defendant's untimely Requests.  *Id*.

Plaintiff also asserts a third basis for rejecting Defendant's Requests for Admissions.  *Id*. at 4.  Plaintiff claims that the Requests are actually interrogatories in substance and thus exceed the presumptive limit of 25 interrogatories under Rule 33(a)(1).  *Id*.  Plaintiff argues that the purpose

of Requests for Admission is to narrow the issues; here, however, Plaintiff maintains that the Defendant has propounded Requests which seek "exactly the same type as it produced for Mr. Dash to authenticate at his deposition last month: posts it found on the Internet by Mr. Dash." *Id.* Plaintiff claims that "[n]one of the material [Defendant] seeks in its [Requests for Admission] was unavailable at that time. It is merely pursuing another bite at that apple. Clearly, Defendant is not seeking to 'narrow issues' with its [Requests for Admission], rather to 'discover' information that was readily available to it earlier." *Id*. at 5.

In opposition, Defendant claims - - as it did in opposing Plaintiff's motion to strike Defendant's motion to compel - - that the motion to strike Defendant's Second Set of Requests for Production of Documents and Requests for Admission is procedurally improper since it seeks to strike a motion, whereas Rule 12(f) only permits parties to move to strike material from a pleading. DE 93 at 1. Second, Defendant states that the motion is meritless since Plaintiff himself initiated service of discovery via email (*e.g.*, Initial Disclosures, First Set of Interrogatories and Requests for Production, Plaintiff's discovery responses) and cannot now be heard to complain. *Id*. at 1-2. As such, Defendant submits that "Plaintiff's initial adoption and then repeated use of email as the exclusive means to serve Seagate" should be "deemed written consent to the use of email service" or, at minimum, estop Plaintiff or waive Plaintiff's rights under Rule 5 to demand hard copies "over nine months after *Plaintiff* instituted the practice of email-only service and conducted this litigation on that basis in the months since." *Id*. at 2 (emphasis in original). Defendant takes note that Plaintiff waited nearly three weeks and only a few days before the close of fact discovery to file the instant motion to strike. *Id*. at 3.

Third, Seagate asserts that, contrary to Plaintiff's contentions, the Requests for Admission are not interrogatories by another name. *Id*. The purpose of these Requests, Defendant argues, is to compel Plaintiff to admit that he made certain postings on various websites pertaining to external drives. *Id*. Finally, Defendant argues that Plaintiff's timeliness challenge to Defendant's discovery requests is unfounded. *Id*. In practice, the parties here have treated electronic service as "equivalent to hand service and responded without extending deadlines by three days." *Id*. In any event, Defendant states that Plaintiff should be estopped from asserting a timeliness objection since Plaintiff himself served his own discovery requests over one month late and provided untimely responses to Defendant's initial discovery requests. *Id*. To the extent that the Court agrees with Plaintiff's timeliness objection, Defendant requests that the fact discovery deadline be extended to permit Plaintiff to respond. *Id*.

For the same reasons the Court enumerated regarding Plaintiff's motion to strike Defendant's motion to compel interrogatory responses, the Court holds that Plaintiff's motion to strike is procedurally improper. Plaintiff was free to move for a protective Order under Rule 26 to prevent his having to respond to Defendant's purportedly belated discovery demands. *See Gross v. Lunduski*, 304 F.R.D. 136, 140 (W.D.N.Y. 2014) (addressing defendant's motion for a "protective order against Plaintiff's discovery requests, specifically directed to Plaintiff's request for prior and subsequent excessive force complaints by prison inmates"). Plaintiff did not do so. Accordingly, Plaintiff's motion to strike is DENIED. In light of the arguments raised by Plaintiff, however, the Court will treat the motion to strike as one seeking a protective order against Defendant's discovery demands.

Plaintiff raises a number of objections to Defendant's November 2014 discovery requests on the merits as well. First, Plaintiff claims that Defendant was not authorized to serve these requests via "electronic means" because Plaintiff never "consented in writing" to electronic service, pursuant to Fed. R. Civ. P. 5(b)(2)(E). "A paper is served ... by ... sending it by electronic means if the person consented in writing-in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served." *Alli v. Steward-Bowden,* No. 11 Civ. 4952, 2013 WL 6503507, at *3 (S.D.N.Y. Dec. 5, 2013) (quoting Fed. R. Civ. P. 5(b)(2)(E)). Moreover, Plaintiff emphasizes that even if service via electronic means was proper in this case, the Court would still need to calculate additional time beyond the presumptive 30 days allotted for parties to respond to requests for admission and documents, which would render Defendant's supplemental demands untimely. *Id.* Specifically, "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)." *Id.* (quoting Fed. R. Civ. P. 6(d)).

The Court recognizes that Plaintiff has both served and received discovery via email throughout this action, without objection, until December 19, 2014 - - 12 days prior to the close of discovery and 20 days following Defendant's service of its Second Set of Requests for Production of Documents and Requests for Admission. *See* DE 93, Exs. A-D. Nonetheless, the case law is clear that "service via electronic mail is only appropriate if the person to be served in that manner 'consented to it in writing.'" *Family Dollar Stores, Inc. v. United Fabrics Intern., Inc***.,** 896 F. Supp. 2d 223, 228 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 5(b)(2)(E)). "Without this written consent, such attempted service shall be considered void." *Id.* (quoting *Ortiz–Moss v. N.Y. City*

*Dep't of Transp.,* 623 F. Supp. 2d 404, 407 (S.D.N.Y. 2008)).  Importantly, "[c]onsent must be

express, and cannot be implied from conduct."  *Id.*  (quoting *Wright–Jackson v. HIP Health Plan,*

No. 07 CIV. 1819, 2009 WL 1024244, at *7 (S.D.N.Y. Apr. 15, 2009) (quoting from Advisory

Committee Notes to Fed. R. Civ. P. 5, 2001 Amendments)); *see also Masterson v. NY Fusion*

*Merchandise, LLC*, 300 F.R.D. 201, 205 (S.D.N.Y. 2014) ("service could not be effected through

e-mail without N.Y. Fusion's express written consent") (citing Fed. R. Civ. 5(b)(2)(E) and *Family*

*Dollar,* 896 F. Supp. 2d at 223).  There is no record of Plaintiff's counsel having expressly

consented to accepting service through electronic means here.  However, given the course of

conduct between the parties, the Court will permit Defendant to serve its Requests for Admission

now, out of time.  The Requests are to be served by mail within two days of the entry of this Order.

Plaintiff will then have 30 days to serve his responses.

     Substantively, the Court disagrees with Plaintiff's contention that Seagate's Requests for

Admission are interrogatories by another name.  *See* DE 93, Ex. E.  "Requests for Admissions are

intended to narrow the factual issues of a case."  *Biernacki v. U.S*., No. 11 Civ. 973, 2012 WL

6100291, at *3 (W.D.N.Y. Dec. 7, 2012) (citation omitted).  The party who requests the admission

"bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in

such a manner that they can be answered with a simple admit or deny without explanation, and in

certain instances, permit a qualification or explanation for purposes of clarification."  *Henry v.*

*Champlain Enters., Inc*., 212 F.R.D. 73, 77 (N.D.N.Y. 2003).  "Requests for Admissions are not a

discovery device much like interrogatories, demand for documents or depositions, nor are they to

be considered substitutions for them."  *Id.; see Saliga v. Chemtura Corp*., No. 12 Civ. 832, 2013

WL 6097100, at * 3 (D. Conn. Nov. 20, 2013) ("Requests for admissions are not intended for

factual discovery that should be done through interrogatories and depositions. They are a cruder device because the party may accept, deny or object to facts phrased by the opposition. They exist to narrow the issues at trial where the parties' unambiguously agree") (citations omitted).

Here, Defendant propounded 30 Requests for Admissions, all of which request the admission or denial of various postings purportedly made by the Plaintiff on online forums concerning digital storage devices and/or related technology issues. *See* DE 93, Ex. E (*e.g.*, "Admit that Exhibit 3 attached to these Discovery Requests is a true and correct copy of a posting made by You on the Apple Support Communities website thread, *3GS: 5 bars of 3G but no data? 2nd 3GS working fine?*, *available at* https://discussions.apple.com/message/9855007."). The Court believes that Plaintiff's publicly available statements concerning such technologies and products are relevant to Plaintiff's deceptive trade practices claim. These are straightforward requests which can be answered with a simple admission or denial and they serve to narrow the issues concerning Plaintiff's status as a consumer, both individually and on behalf of a putative class.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's motion to reopen Plaintiff's deposition [DE 61]; GRANTS Defendant's motion to compel an amended response to Interrogatory No. 8 and related Requests for Production of Documents [DE 82]; DENIES Plaintiff's motion to strike Defendant's motion to compel [DE 89]; and DENIES Plaintiff's motion to strike Defendant's Second Set of Requests for Production of Documents and Requests for Admission [DE 90], to the extent set forth in this Memorandum and Order.

**SO ORDERED.**

Dated: Central Islip, New York
      July 14, 2015


<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge